**BONDPRO CORPORATION, Plaintiff,**

v.

**SIEMENS WESTINGHOUSE POWER CORPORATION, Defendant.**

No. 04–C–0026–C.

United States District Court,
W.D. Wisconsin.

May 28, 2004.

Joel D. Skinner, Gerald T. Laurie, for Plaintiff.

David T. Schultz, Halleland Lewis Nilan Sipkin, Minneapolis, MN, for Defendant.

## OPINION AND ORDER

CRABB, District Judge.

This is a civil action in which plaintiff BondPro Corporation is suing defendant Siemens Westinghouse Power Corporation for the alleged misappropriation of trade secrets. Plaintiff brought the action in the Circuit Court for St. Croix County, Wisconsin; defendant removed it to this court. Jurisdiction is present. The parties are citizens of different states and more than $75,000 is in controversy. The case is before the court on defendant's motion to dismiss the case for plaintiff's failure to state a claim on which relief may be granted.

Plaintiff set out seven claims against defendant in its complaint, but withdrew count three in its brief in response to defendant's motion. I find that two of the claims are sufficient to state a claim; the remaining four will be dismissed.

## ALLEGATIONS OF FACT

Plaintiff BondPro Corporation is a Wisconsin corporation with its principal place of business in Hudson, Wisconsin. It specializes in the design and manufacture of industrial adhesives and composites. Defendant Siemens Westinghouse Power Corporation is a Delaware corporation with its principal place of business in Orlando, Florida.

In 1994, defendant talked to plaintiff about purchasing adhesive products and services, primarily for products associated with defendant's generator rotors. In March 2000, one of plaintiff's employees, Scott Wang, developed a new method of manufacturing "slot cell insulation" for industrial rotors. (Slot cells are U-shaped slots or channels in a metal rotor body.

Slot cell insulation electrically insulates rotor windings from the rotor body.) He reduced the concept to practice. On or about March 31, 2000, plaintiff created a "male mold" to manufacture sales samples implementing its new slot cell insulation concept.

On or about March 12, 2001, Wang informed defendant's manager of generator rotor engineering that plaintiff could produce slot cell insulation by a proprietary method. About three days later, defendant's employee Mark Miller asked Wang for details, which Wang refused to disclose on the ground that the method was plaintiff's property, confidential and being treated as a trade secret.

On March 20, 2001, Wang documented his conception and reduction to practice activity to date on an Invention Disclosure form provided him by his attorneys.

On May 12, 2001, defendant issued a purchase order for work identified as "slot cell mold tool/new process dev" for $2000, "test rotor slot cells" for $3840 and "test charges on raw material" for $1000. The back of the purchase order contained "general terms and conditions," stating in pertinent part:

13. INTELLECTUAL PROPERTY

A. Seller agrees to make prompt and complete disclosure to Buyer of all inventions and disclosures made or conceived as a result of Work performed under the Purchase Agreement. Seller agrees to keep necessary records supporting such inventions and discoveries and will furnish buyer upon request all such records.

B. Any invention, discovery, proprietary information, maskwork, software, system, data or report, resulting from the Work performed under the Purchase Agreement shall be the sole property of Buyer. All patents, copyrights, trade secrets, trademarks, maskworks or oth-

er intellectual property resulting from work under the Purchase Agreement shall be property of Buyer. Buyer shall have the full right to use such property in any manner without any claim on the part of Seller and without any duty to account to Seller for such use. Seller agrees to assign to Buyer any patent or patent application resulting from Work performed under the Purchase Agreement, and to provide reasonable support for Buyer's prosecution of such patent application.

C. The parties agree that any original work of authorship created under the Purchase Agreement is a work made for hire for purposes of copyright ownership. To whatever extent Seller has any interest in any original work or authorship created under the Purchase Agreement, Seller agrees to assign and hereby assigns its entire interest in such work to Buyer, including all rights to derivative works.

Plaintiff did not intend to transfer intellectual property rights to its method. When Wang tried to question Kevin Hazel (defendant's generator components manager) about the terms and conditions of the purchase order, Hazel acknowledged that plaintiff owned the slot cell manufacturing method.

Wang reduced to practice the method for manufacturing slot cell insulation no later than July 15, 2001, by using the male mold and other steps to manufacture slot cell insulation. On July 15, 2001, plaintiff shipped defendant a sample of slot cell insulation made using the method of the invention. In September 2001, Wang met with Hazel to discuss the parties' business relationship. Wang discussed intellectual property concerns and disclosed several documents that were marked as "proprietary" and contained plaintiff's trade secrets. At some time before January 2002, defendant's employee Miller asked plaintiff for bribes for continued business with defendant. Plaintiff refused the request.

In early 2002, defendant's employees gave plaintiff poor quality ratings and low delivery scores in retaliation for plaintiff's complaints to defendant about the parties' business relationship, including Miller's attempt to obtain bribes from plaintiff.

On May 31, 2002, defendant filed a United States patent application entitled Method of Making Slot Cell Insulation. The application discloses and claims plaintiff's invention but names Miller as the inventor. The application is pending.

During the course of the parties' relationship, plaintiff provided defendant documentation about its method on the understanding that it was trade secret material, stamped "proprietary statement." Without obtaining plaintiff's permission, defendant disclosed the information to its suppliers as part of its purchasing design specifications. Defendant never told plaintiff it had made this information available to others.

In addition to stealing the trade secrets relating to slot cells, defendant has committed fraud on the United States Patent and Trademark Office by filing patent applications on at least two other trade secrets belonging to plaintiff.

## OPINION

### A. *Count One: Violation of Wisconsin's Trade Secrets Act*

■ Defendant contends that plaintiff has failed to state a claim in count one, alleging a violation of the state trade secrets act, because plaintiff has not identified the trade secrets that it says were misappropriated. Defendant's contention is not well founded. A reading of the entire complaint makes it clear that plaintiff considers its manufacturing process for slot cell insulation to be a trade secret and

that this label applies to the documentation that plaintiff provided defendant about the process. This is enough information to allow defendant to frame an answer. If defendant needs more specificity, it can obtain it through discovery.

### B. Count Two: Commercial Disparagement

Wisconsin law makes it a tort to make false statements, communicated by speech, conduct, or in writing to a person other than the person defamed, when the communication is unprivileged and is defamatory. Plaintiff alleges that defendant's agents defamed plaintiff by making false statements about plaintiff in industry publications and in e-mails. These allegations are insufficient to state a claim. As liberal as the federal rules are when it comes to pleading, defendant needs more information than plaintiff has provided in order to understand what plaintiff is alleging it did and when.

Defendant's motion to dismiss will be granted with respect to count two, without prejudice.

### C. Count Four: Common Law Misappropriation

Defendant contends that this count and others are displaced by the state's trade secrets act. Plaintiff does not deny the contention as it relates to this count. Therefore, defendant's motion to dismiss will be granted as to this count, with prejudice.

### D. Count Five: Unjust Enrichment

In this count, plaintiff alleges that defendant "utilized a purchase order with unconscionable terms to attempt to steal [plaintiff's] trade secrets, including the Method for manufacturing slot cell insulation developed independently by [plaintiff]. Given the absence of a meaningful choice for [plaintiff] on the Purchase Order dated May 12, 2004, together with terms that unreasonable favor [defendant] on the Purchase Order, any and all gains made by [defendant] using unlawfully converted trade secrets from [plaintiff] must be considered unjust enrichment for [defendant]." Cpt., dkt. # 1, at 10, ¶¶ 41 & 42.

Plaintiff maintains that its allegations make out a permissible parallel claim that is not barred by the trade secrets act. However, it concedes that the law permits only those parallel claims "that do not rely upon a factual allegation of a misappropriated trade secret." Plt.'s Br., dkt. # 10, at 10. This concession dooms count five, which is obviously reliant upon the factual allegation of a misappropriated trade secret. Plaintiff argues in its brief that even if it fails to show that defendant misappropriated a trade secret, it should be able to show that defendant made fraudulent promises and inducements to cause plaintiff to use its own experience and expertise to develop the slot cell process and that defendant is benefiting from plaintiff's efforts without paying for them. Plaintiff's argument is not persuasive; it did not allege any facts to support its new position or give any other indication that it would make such an argument. Moreover, it did not identify any fraudulent promises and inducements that defendant made. If it is going to base a claim upon fraud, it must identify the fraud with particularity, as Rule 9(b) requires. This count will be dismissed, with prejudice.

### E. Count Six: Breach of the Covenant of Good Faith and Fair Dealing

Plaintiff's allegations in count six are vague but not so vague that defendant cannot be required to respond to them. Moreover, they are not necessarily displaced by plaintiff's claims of theft of trade secrets. As plaintiff points out, if the court should find that the slot cell insulation process is not a trade secret, plaintiff might still have a claim against defendant

for the breach of a covenant of good faith if it could show that defendant entered into the contract not with the idea of having plaintiff perform some work for it but for the purpose of learning plaintiff's techniques and processes.

### F. *Count Seven: Abuse of Process*

 In count seven, plaintiff alleges that defendant is using "the patent law and other abuses of process" to protect and consummate its thefts of plaintiff's trade secret technology. Cpt., dkt. # 1, at 11. Defendant contends that this count should be dismissed for two reasons: Wisconsin's trade secret law displaces the claim and federal patent law preempts it.

To the extent that plaintiff is bringing a state law claim based upon defendant's alleged improper use of plaintiff's trade secrets, the claim is displaced by Wis. Stat. § 134.90(6), the Uniform Trade Secrets Act. This statute provides:

(a) Except as provided in par. (b), this section displaces conflicting tort law, restitutionary law and any other law of this state providing a civil remedy for misappropriation of a trade secret.

(b) This section does not affect any of the following:

1. Any contractual remedy, whether or not based upon misappropriation of a trade secret.

2. Any civil remedy not based upon misappropriation of a trade secret.

3. Any criminal remedy, whether or not based upon misappropriation of a trade secret.

Plaintiff has no grounds on which to argue that count seven is not displaced. His request for a civil remedy is based upon the misappropriation of a trade secret. This conclusion makes it unnecessary to consider whether the claim would be preempted by federal patent law.

### ORDER

IT IS ORDERED that the motion to dismiss filed by defendant Siemens Westinghouse Power Corporation is DENIED with respect to counts one and six of plaintiff BondPro Corporation's complaint; it is DENIED as moot with respect to count three; and it is GRANTED with respect to counts two, four, five and seven. Plaintiff's complaint is dismissed with prejudice as to counts four, five and seven.